## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.

ISABELLA GRUNSPAN, by and through her parent
and guardian, GABRIEL GRUNSPAN, and
GABRIEL GRUNSPAN for himself,

                    Plaintiffs,

vs.

JEFFERSON COUNTY SCHOOL DISTRICT through the BOARD OF EDUCATION
FOR THE JEFFERSON COUNTY SCHOOL DISTRICT,

and

UNITED STATES DEPARTMENT OF EDUCATION, through the
Secretary of Education, ELIZABETH D. DeVOS, in her official capacity, and
J. AARON ROMAINE, in his official capacity as Program Manager, Region VII,
OFFICE FOR CIVIL RIGHTS FOR THE UNITED STATES DEPARTMENT
OF EDUCATION.

                    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs, through their attorneys, bring this legal action to redress illegal discriminatory practices occurring in a public school in Jefferson County, Colorado that was operated by the Board of Education for the Jefferson County School District, that the Department of Education, Office for Civil Rights has refused to remedy and correct. This legal action is brought on information known to the Plaintiffs and upon information and belief.  Plaintiffs allege as follows:

## I.    JURISDICTION AND VENUE

1.      This United States District Court has jurisdiction pursuant and under 28 U.S.C. § 1331, 28 U.S.C. § 1343, 2000(d) of Title 42 of the United States Code, Title VI of the Civil Rights Act of 1964; 28 U.S.C. § 1346, as an action in which the United States Government or one of its Departments is a defendant, and 5 U.S.C. § 552(a)(4)(B) relating to the Freedom of Information Act (FOIA).

2.      The United States District Court for Colorado is the proper venue for this proceeding in that Plaintiffs reside in Colorado, the Defendant Jefferson County School District is a school district located in the state of Colorado, and its Board does business at a location in Golden, Colorado.  The Department of Education maintains its Regional Office for Civil Rights in Denver, Colorado and this office received administrative complaints from the Plaintiffs relating to anti-Semitism and retaliation and was tasked with investigating the complaints and remedying the violations of law that were found to exist.  That office issued its reports and findings in calendar year 2017 and was the location where records requested pursuant to FOIA are located.

## II.    PARTIES

3.      Gabriel Grunspan is a resident of the state of Colorado.  Mr. Grunspan is Jewish. Mr. Grunspan resides with his daughter, Isabella Grunspan.  Isabella Grunspan identifies as being Jewish and went to Israel for her bat mitzvah ceremony.  The Grunspans are descendants of Holocaust survivors.  Isabella Grunspan in calendar years 2016 and 2017 was subjected to anti-Semitic targeting and activity in her middle school located in Jefferson County, and after making an outcry about discrimination, including a presentation to the Jefferson County Board of

Education in January 2017, Ms. Grunspan was subjected to retaliation by school officials.  Her father, Gabriel Grunspan, was similarly subjected to retaliation for the outcry made by his daughter and his efforts to protect her. Isabella Grunspan further was discriminated against based on gender in calendar year 2017 by denying her the opportunity to play on a baseball team that was affiliated with the Jefferson County School District and specifically Evergreen High School.

4.      Jefferson County School District is a government entity organized under the laws of the State of Colorado.  The Board of Education for the school district is the governing body. The school district has schools located throughout Jefferson County, Colorado.  One school located in the district is known as West Jefferson Middle School (also known as West Jeff Middle School).   This is a school that Isabella Grunspan attended.  Another school in the District is Evergreen High School, which Isabella Grunspan also attended.  While she attended West Jeff Middle School, Isabella Grunspan experienced offensive and abusive anti-Semitic actions, as did a number of other Jewish students and at least one Jewish teacher.  Ms. Grunspan also suffered retaliation from the principal as well as other school personnel after making outcries about the anti-Semitism and improper gender-related actions by students. The Jefferson County School System receives federal funds for educational programs pursuant to a contract or agreement and is required to follow federal law and federal regulations relating to educational services, including anti-discrimination provisions in federal law.

5.      The United States Department of Education is a department of the federal government.  The Department's Chief Executive Officer is Secretary Elizabeth "Betsy" DeVos. The Department of Education is tasked with enforcement of federal laws pertaining to education. The Office for Civil Rights ("OCR") is an enforcement arm of the Department of Education that

is responsible for enforcement of laws prohibiting discrimination in education for entities

receiving federal funds.  The Denver Regional Office is managed by J. Aaron Romaine.  In

calendar year 2017, OCR issued decisions relating to complaints of discrimination and retaliation

filed on behalf of Isabella Grunspan and Mr. Grunspan.  These decisions refused to take actions

to remediate the anti-Semitic actions that were determined to be persistent during the 2016-2017

calendar years. Subsequent to the decisions, a request under the Freedom of Information Act was

made and the department and OCR refused to turn over certain records, including the Region's

recommended decisions that were made to the national office.

### III.    FACTUAL ALLEGATIONS-RELATING TO ANTI-SEMITISM

6.      All facts contained in paragraphs 1-5 above are realleged and incorporated by

reference as if specifically pled in detail.

7.      West Jeff Middle School is located in the southern part of Jefferson County.

8.      Historically, there have been ultra-right wing, white supremacist activity,

including Ku Klux Klan activity, in the southern part of Jefferson County near Park County.

Anti-Semitic activity had been present in the community and at the West Jeff Middle School for

a number of years. This anti-Semitism continues to the present time.  Just recently a swastika

was painted on the sidewalk of the school. Attachment A is a newspaper article relating the event

where the principal of the school spoke out about the situation.

9.      During the summer of 2016, while the school was not in session, a Swastika was

painted on the wall of West Jeff Middle School.  This act was not reported to law enforcement

and no investigation by law enforcement occurred. Instead the school painted over the Swastika.

Students and parents were not alerted to the situation by the former principal, and were not asked

to provide information about such activity or to be on the lookout for other Anti-Semitic actions. Students were not educated to the issue and the matter was swept under the rug by the principal and school officials. This is completely different than the actions taken by the present principal.

10.     In early September 2016 a middle school student, while at school, drew a Swastika on a piece of paper and wrote "Heil Hitler" on the paper which, on information and belief, he gave to another student.  An eighth grade teacher discovered the paper with the Nazi symbols and reported it to the assistant principal.  The situation was swept under the rug with a one-day, in-school suspension and a call to the student's parents.  Nothing was done to educate the teachers or the student body about racist anti-Semitic behavior. No one from the school or the district cared to look to see how pervasive the anti-Semitic activity had become in the school.

11.     On or about September 27, 2016, during a technology class, a student made an offensive anti-Semitic statement to a Jewish student.  The offensive statement compared a cookie and a Jew with the difference being that the cookie comes out of the oven.  This statement was followed by the student making a Nazi salute and loudly stating "Heil Hitler".

12.     This was not the first time that the victimized student had been exposed to anti-Semitic statements.  The student had experienced anti-Semitic statements on three other occasions, according to a parent of the student victim. Also according to the parent of the student, neither she nor her husband had been informed about the anti-Semitic behavior after the school was alerted to the situation.  School officials did not deny that the student's parents were not notified.

13.     The teacher in the technology lab where the anti-Semitic actions occurred did not report the events.

14.     The student who was victimized by the anti-Semitic activity reported the events to the West Jeff Middle School administration and provided a written statement about the anti-Semitic actions.  The principal and assistant principal again swept this situation under the rug, first by not contacting the student's parents. The teacher in the technology course was not even interviewed to determine what he knew or heard. Other students in the class were not interviewed about the event. The offending student was given a one-day, in-school suspension. The principal met with the offending student's parents.  The offending student was not made to apologize to the student who was victimized, or required to take any action demonstrating he understood the serious offensive behavior that had been committed. Again, nothing was done to alert the teachers or students that anti-Semitic activity was occurring and to report such, if observed.  No one from the school or the district addressed the pervasive anti-Semitism had become at the school.

15.     During this September time period and throughout 2016, certain students at West Jeff Middle School were giving Nazi salutes and verbally stating "Heil Hitler" as they walked through the halls during class breaks.  These activities went unreported for a substantial period of time, although teachers routinely were in the hallways during these breaks. The middle school administrators were trying to whitewash the situation and had not communicated any message to watch out for such anti-Semitic activity or to address such activity if it was observed.  It was an apparent culture to sweep such activity under the rug and to pretend these things didn't happen.

16.     On September 29, 2016, in a class at the West Jeff Middle School, a male student commented to Isabella Grunspan that the Zika virus should be eradicated by gassing them like

the Jews.  This shocked and horrified Isabella Grunspan because her relatives had been gassed to death in Nazi Germany.

17.     In the next period, a TSA advice class, the same male student repeated the statement about Jews being gassed and made a Hitler/Nazi salute. A number of students witnessed this behavior.

18.     On the same day the teacher for the TSA advice class, who was also the teacher for technology lab in which the student had experienced the anti-Semitic cookie-oven comment, told Ms. Grunspan that she and that student should stick together and that Ms. Grunspan should take the student under her wing because both were Jewish. This statement clearly implied that the teacher knew what was going with anti-Semitism.

19.     Isabella Grunspan reported the racist anti-Semitic behavior and the teacher's statement about taking the other student under her wing because they were Jewish on the evening of September 29, 2016.  This was done by e-mailing the principal.

20.     On September 30, 2016 an investigator for the district contacted Ms. Grunspan by telephone and had a brief conversation with her.

21.     The principal of West Jeff Middle School interviewed various students who were in the class with Ms. Grunspan.  The students corroborated that anti-Semitic statements were made to Ms. Grunspan.  They also corroborated that anti-Semitic activity had been going on for a considerable period of time and that lots of people (students) were doing it.

22.     The district claims that the principal imposed a two-day, out-of-school suspension on the student, who had made the racist offensive comments.  The student was not made to apologize to Ms. Grunspan or to remediate his behavior.  The student was not required to go to

counseling. The other students who had witnessed the anti-Semitic activity and acknowledged participation in similar actions were not disciplined or warned that future similar actions would result in suspension or discipline, nor were they required to go to counseling about the behavior.

23.     The teacher in whose class the anti-Semitic activity occurred was not interviewed. He was not questioned about what he knew of anti-Semitic activity in the school and why he had made the statement to Ms. Grunspan about Ms. Grunspan and the other student sticking together because they were Jewish.  Ms. Grunspan felt that the environment in the class in which the anti-Semitic statements occurred was too hostile and she dropped the class for her own well-being.

24.     The administrators of the West Jeff Middle School, including the principal and assistant principal, continued to turn a blind eye to the students in the hall giving Hitler salutes and saying "Heil Hitler" or "Sig Heil."  These administrators did not hold a meeting with teachers and other staff to tell them to be aware of potential anti-Semitic activity or how to address it if it was observed.

25.     The anti-Semitic activity continued in West Jeff Middle School and so did acts of retaliation.

26.     Shortly after Ms. Grunspan had made her outcry about the events of September 29, 2016, Ms.  Grunspan experienced harassment by a group of male students, including sexual harassment.  One of the boys grabbed Ms. Grunspan from behind and made a statement that related to her previous outcry.

27.     After the outcry by his daughter, Mr. Grunspan came to the school to discuss his daughter's situation.  Upon leaving the school he found that three Swastikas had been scratched into the paint of his car.

28.     Ms. Grunspan continued to be retaliated against and harassed by students following her outcries.  She observed and heard about anti-Semitic activity being perpetrated against other students.

29.     It was not until February 10, 2017 that the school district acknowledged and admitted, through its Chief Communication Officer, in an e-mail sent to the parents and guardians of West Jeff Middle School, that anti-Semitic remarks had occurred and had been an ongoing problem. The communication portrayed the situation as one that had been resolved or was being resolved with lessons on social awareness.  This belated concession occurred only after Ms. Grunspan spoke at public meeting of the Board of Education in January 2017 and exposed the anti-Semitism that had and was occurring.  This caused wide press coverage and public attention.

30.     Other anti-Semitic acts and acts of retaliation occurred and continued at the West Jeff Middle School after September.

31.     One incident involved a locker of a Jewish student at the West Jeff Middle School where the word "bitch" was scratched onto the locker.  This was reported and witnessed by a teacher, who is Jewish.  The teacher reported the offensive racist incident to the school administration.  The former principal falsely claimed that the word "bitch" was present at the start of the school year. This was a student who had reported anti-Semitic actions.

32.     On October 18, 2016 a swastika was observed on student's notebook.  Ms. Grunspan reported this with another student to the principal.

33.     Students continued to give the Nazi salutes in the halls and speak the words "Heil Hitler" or "Sig Heil." These salutes caused Ms. Grunspan great concern for her well-being.

34.     Students had swastikas drawn on their arms or bodies and on notebooks and binders.

35.     On December 7, 2016 a teacher at the West Jeff Middle School, who is Jewish, wrote the principal of the school alleging that the school environment was highly offensive because of the anti-Semitic atmosphere that has been created and allowed to exist. This teacher had complained about the mistreatment of Jewish students before December 7, 2016.

36.     This same teacher reported in an investigation that was undertaken by the Department of Education, OCR, after Mr. Grunspan initiated a complaint against the school district, that she was being retaliated against.  She also notified OCR on January 9, 2017 that another teacher had confided to her that she had witnessed a group of male students raising their arms in Nazi salute and yelling "Heil Hitler" in the hallway.

37.     At no time did the administrators at the West Jeff Middle School, or the administration at the district level, attempt to learn who was instigating this hate activity, how widespread the activity was, and the extent of knowledge about the activity possessed by teachers and staff.  This was again an attempt to sweep the problem under the rug and not address the racist cultural element that had invaded the school.

38.     Plaintiff, Mr. Grunspan, during the months of October, November, and December 2016, pressed the middle school and the district for information and answers on how the anti-Semitism problem directed against his daughter and other students would be addressed, how teacher indifference would be addressed, how the middle school principal's indifference would be addressed and what remediation would be provided for his daughter. The school

administrators, including the principal and certain teachers became resentful that the issue had been brought to the forefront by Ms. Grunspan and her father.

39.     On October 12, 2016, R. Craig Hess, Chief Legal Counsel for the District, wrote Mr. Grunspan acknowledging that the principal of the middle school, Becky Brown, had found merit to the Grunspan complaint that Isabella Grunspan had been subjected to anti-Semitic comments. Mr. Hess' letter also claims that the principal had taken corrective action against the students and the school would further conduct a school-wide educational program on anti-bullying and tolerance.

40.     Mr. Grunspan, after receiving the October 12, 2016 communication, still pressed the school principal, teachers at the middle school and the district for additional answers about actions it was taking to protect his daughter and provide her fair treatment and end the discrimination. This included, but was not limited to a November 10, 2016 communication addressed to Mr. Hess. This communication informed Mr. Hess that Isabella Grunspan was still being targeted and harassed and treated unfairly. It also indicated that other students would not call the middle school a safe place in which to be educated. When Mr. Grunspan wrote this letter he had talked to other parents, whose children had experienced anti-Semitic behavior.

41.     Shortly after providing the November 10, 2016 communication, Mr. Grunspan was advised that the District was willing to transfer his daughter to another school. The District offered no economic, educational, or other assistance, so that Isabella could attend another middle school that was substantially more distant from her home or to make her transition feasible. No plan was presented to Mr. Grunspan about how the district was going to clean up the

racist environment that still existed at the West Jeff Middle School. The district then retracted the offer.

42.    On December 21, 2016 Mr. Grunspan was sent a letter from Dan Cohan, Achievement Director for the District, advising Mr. Grunspan that the District was unilaterally placing Mr. Grunspan on a communication plan. This letter acknowledged that the fact that Mr. Grunspan during the school year had raised a number of concerns about his daughter and the staff at West Jeff Middle School. The letter indicates that the concerns have been investigated and will continue to be investigated. The letter accuses Mr. Grunspan of being disruptive and threatens Mr. Grunspan that if he continued with his conduct he would be turned over to the appropriate officials. Nothing in this letter apologized for the treatment of Isabella Grunspan or offered any remedial solution to the continuing hostile educational environment that Isabella was having to endure.

43.    The communication plan that the District indicated it would it enforce was that: 1) For concerns relating West Jeff Middle School staff, Mr. Grunspan would have to e-mail or call Craig Hess, the attorney for the District; 2) For school or district issues involving Isabella, Mr. Grunspan was to only communicate with Becky Brown, the principal or Mr. Cohan. Additionally, if Mr. Grunspan needed to meet with a West Jeff Middle School teacher, he had to make arrangements for such through Becky Brown or Mr. Cohan.; and 3) For GT or testing issues for Isabella, Mr. Grunspan was required to contact Roger Dowd, the GT Director.

44.    At an unknown date, which was before January 13, 2016, teachers and other personnel, including counselors, at West Jeff Middle School were verbally given instructions by the Middle School principal, Ms. Brown, not to have direct communications with Mr. Grunspan

without clearing them with the principal.  Teachers began implementing this instruction in December and continued to follow the instruction thereafter.

45.     The instructions given to the West Jeff Middle School teachers and staff interfered with the ability of Mr. Grunspan to monitor his daughter's progress in school, problems that existed that Isabella was facing and how she was recovering from the emotional trauma she had experienced from the racist, anti-Semitic environment and retaliation that was directed toward her.

46.     At the time the no-communication order was given at the school, Isabella Grunspan was receiving help at the middle school for the emotional trauma she had undergone from the anti-Semitic environment and retaliation she experienced.  This help was being provided by a school counselor. The principal knew that this counseling was going on, but provided no exception for the counselor to provide information to Mr. Grunspan relating to his daughter's emotional state, which was fragile.

47.     The instructions to teachers, staff and Ms. Grunspan's counselor concerning not to communicate with Mr. Grunspan was a form of retaliation designed to punish Mr. Grunspan for speaking out about the discriminatory and abuse treatment that was imposed upon his daughter.  The instruction also was a denial of equal rights for Isabella Grunspan.

48.     On December 22, 2016, an attorney hired by Mr. Grunspan, to represent both himself and his daughter, wrote to Craig Hess advising him of the representation.  This letter criticized the school for its cultural and ethnic insensitivity and the failure to provide Isabella Grunspan a public apology for what she experienced.  The letter requested proof that a public

apology was made.  No such proof was ever provided.  Through the present no such apology has

ever been made by the District or the former principal at West Jeff Middle School.

49.     Mr. Grunspan, through his attorney, contested the communication directive given

by the District demanding that it be withdrawn.  Through an attorney representing the District,

the District indicated that it would consider modifying the directive.

50.     On December 27, 2016, Mr. Grunspan sent an e-mail to Mr. Cohan informing him

that "we must work together until remediation occurs at the District level."  Mr. Grunspan in the

e-mail confirmed that at the school level he would work with Becky Brown and Mr. Cohan but

indicated that the attacks against his daughter and the anti-Semitism must stop. He also stated

that the attacks by the administration at the school must stop. Many of the attacks at that time

were being directed against Mr. Grunspan for raising the issues of anti-Semitism and the

mistreatment of his daughter. He also confirmed he would work with Roger Dowd on testing and

GT issues.  The e-mail indicated that he did not agree to no direct contact with Isabella's teachers

and that Mr. Grunspan would not agree to having no direct contact with Isabella's counselor,

who was a psychologist.

51.     On January 12, 2016, Isabella Grunspan gave an impassioned statement to the

Jefferson County Board of Education at its regularly scheduled January meeting. Ms. Grunspan

was accompanied by her father and her lawyer.  The statement Ms. Grunspan made was about

the anti-Semitism that had and was occurring at the West Jeff Middle School.  She pled that the

Board take action to fix the situation for the good of the students.  The public session was aired

for public information.

52.     At the conclusion of her presentation, one board member thanked her.  No board member apologized to her for what she had experienced or what was happening in the school. The board made no commitment even to investigate the situation.

53.     Ms. Grunspan's presentation created substantial publicity and public media attention.  In subsequent months, other anti-Semitic activity in Jefferson County public schools activity was reported.

54.     Ms. Grunspan, following her presentation, received numerous communications complementing her for bravery and for standing up for what was right.  None of these communications were sent to her by the members of the school board, staff from the school board or the superintendent of the school district, or any official of the school district. One communication was sent by a parent of Jefferson County students to Ms. Grunspan's attorney reporting a pattern of ignoring religious discrimination at the West Jeff Middle School by the principal, Ms. Brown. The communication specifically references an event in 2015.  On information and belief, one or more complaints were made to Ms. Brown in 2015 and before, and these complaints were ignored or swept under the rug and not properly and thoroughly addressed.

55.     Information came to Mr. Grunspan's attention in January 2017 that an instruction that teachers and staff should not talk to Mr. Grunspan without the principal's permission was because Mr. Grunspan had initiated a complaint with the Department of Education, Office of Civil Rights (OCR) concerning anti-Semitism that was occurring at the West Jeff Middle School and the abuse and retaliation suffered by his daughter. OCR was investigating this complaint and had contacted the school district when the direction was given to staff.

56.     On January 13, 2017 the attorney representing Mr. Grunspan and his daughter wrote counsel representing the School District, confirming Mr. Grunspan's position that he had the right to have direct contact with his daughter's teachers and the school counselor who was a psychologist.  On January 17, 2017, another letter was sent to the attorney representing the school board. In that letter, the attorney for the Grunspans indicated that information had come to the attention of his clients that the no-contact instruction was tied directly to the fact that OCR was investigating the school district based on a complaint of discrimination filed by Mr. Grunspan. The communication further provided notice that it was Mr. Grunspan's position that the teacher no-contact order was a form of illegal retaliation and that OCR would be notified about the action that was considered retaliation.

57.     On January 19, 2017, Principal Brown openly and overtly attacked Isabella Grunspan for her outcry to the Board of Education. This attack occurred in a meeting of staff and teachers of the West Jeff Middle School. It occurred in the school. Principal Brown claimed that Isabella Grunspan had made untrue and false statements to the Board of Education and that she was furious about the situation and what occurred.

58.     It was not until late January 2017 that Mr. Grunspan and his attorney learned of the January 19, 2017 attack and statements of Principal Brown. After learning of this form of improper branding of Ms. Grunspan as liar in front of her teachers, which was retaliatory action for Ms. Grunspan exercising First Amendment rights, Mr. Grunspan's attorney sent an e-mail to counsel for the school board and district reporting the information and demanding a direct response from the school district. The district's response was a denial. This denial was a cover-up for improper action of the principal.

59.     From December 2016 through February 2017, the hostile environment directed toward Isabella Grunspan at West Jeff Middle School continued and intensified, affecting her academic performance.  Certain teachers were uncooperative and not supportive relating to assignments and mentoring Ms. Grunspan.  The principal became openly hostile and confrontational with Ms. Grunspan and attempted to learn and invade confidential communications that Ms. Grunspan was having with the school psychologist-counselor, who was providing assistance to Ms. Grunspan for emotional issues that was she suffering as result of the anti-Semitic and retaliatory treatment that she had experienced. The principal also engaged in conduct with a radio transmission that caused Ms. Grunspan embarrassment and discomfort.

60.     The district and West Jeff Middle School also refused or failed to transmit transcripts of Isabella Grunspan's grades in January and February 2017 to several private schools to which Ms. Grunspan was attempting to obtain admission for academic year 2017-2018. These actions caused Ms. Grunspan to be denied admission.

61.     Additionally, in late January 2017 to February 2017, Mr. Grunspan was locked out of the school and refused admission.

62.     Ms. Grunspan, in March 2017, transferred out of the Jefferson County School District system and enrolled and attended a private school in Denver, Colorado.  This transfer resulted from the hostility and abuse that Ms. Grunspan suffered in the Jefferson County School District system and her continued targeting and retaliation after she exposed and spoke out about anti-Semitic activity in the middle school.

63.     Mr. Grunspan incurred expenses related to his daughter's transfer to the private school, including transportation-related expenses.

17

64.     For the school academic year starting in late August 2017, Ms. Grunspan enrolled in Evergreen Senior School.

65.     The actions of the Jefferson County School District, its employees, attorneys, representative, administrators and the West Jeff Middle School principal and her administrators and teachers were all taken under color of law, statute, regulation, rule or ordinance, and/or as a custom or practice and demonstrated a deliberate indifference to the Constitutional and statutory rights of Isabella Grunspan.

66.     Plaintiff Isabella Grunspan was injured by the actions of the Defendant school district and its employees, agents, representative, administrators, the principal of the West Jeff Middle School and her administrators and teachers in that school.  These actions and conduct caused Ms. Grunspan to lose equal educational opportunities, future educational opportunities, emotional distress and upset, loss of Constitutional and statutory rights, and other losses as proven at trial.

## IV.     FACTUAL ALLEGATIONS RELATING TO THE DEPARTMENT OF EDUCATION

67.     In calendar year 2016, Mr. Grunspan on behalf of his daughter filed complaints with the Department of Education, Office of Civil Rights (OCR) through the Denver Regional Office.  The complaints related to anti-Semitic activity occurring at the West Jeff Middle School, the manner in which such was being addressed by the school and the school district, and also retaliation that was being experienced by his daughter, Isabella, and also himself.

68.     OCR assigned an investigator, Jason Langberg, to the complaints, notified the school district that complaints had been filed, and requested information from the school district in response to the complaints. The complaints were assigned case numbers of 8-17-1005 and 8-

17-1138 by OCR.  Mr. Langberg also had periodic contact with Mr. Grunspan and Isabella Grunspan.

69.     The OCR investigation lasted into calendar year 2017.  The Grunspans were advised by Mr. Langberg that he had completed the investigation and that the results of the investigation had to be reviewed and approved by the head of the office.  The Grunspans also received information that the results had been approved at the district level and had been sent to the national office in Washington, D.C.  The Grunspans were not told the results of the investigation and what was recommended.

70.     Based on information and belief, not all investigations and recommendations of an OCR Regional Office need to be sent to the national office in Washington, D.C. for approval. Investigations that conclude that there is discrimination occurring and recommend a remediation require approval at the national level.

71.     Based on information and belief the Department of Education and the National OCR Office has taken a position on anti-Semitic activity in schools of lessening enforcement efforts.

72.     On information and belief, the national office of OCR determined that it would revise and change the recommendation of the Denver Regional Office in one or both of the investigations conducted by Mr. Langberg and instructed the Denver OCR to make a finding that there was insufficient evidence to show that the discrimination as alleged occurred.  To reach this conclusion, OCR said it was limiting the findings to acts specifically directed against Ms. Grunspan, and discounting the entire hostile anti-Semitic environment that permeated the school.

73.     On August 22, 2017, Mr. Stephen Chen, program manager for the OCR Regional Office issued findings in OCR's investigation of the discrimination case, Case #08-17-1005. The findings are absolutely contradictory to the conclusion reached that there was a lack of evidence to support the claim of anti-Semitic discrimination occurring.

74.     The OCR findings on Discrimination Based on National Origin, on page 4 of 25 in Case #08-17-1005, concluded that a hostile environment existed based on six undisputed incidents alone.  One of the six incidents discussed is what happened to Ms. Grunspan and the response of the school (Page 6-10 of the findings). Other events are thereafter discussed. This finding relating to the existence of a hostile environment involving national origin discrimination is reiterated on page 17 of the findings, including this language: "Anti-Semitic harassment at the school was persistent during the 2016-2017 school year." (page 17).

75.     On page 18 of the findings by OCR the following is stated: "We find, by a preponderance of the evidence, that the anti-Semitic harassment was persistent, pervasive, and severe, and thus, that a hostile environment existed at the School."

76.     The determinations of OCR also note that OCR was closing the cases and relinquishing its authority over the matters.

77.     After receipt of the OCR determinations, the Plaintiffs through their attorney made requests for records under the Freedom of Information Act ("FOIA"). The request was received and given the FOIA number of 18-00144.

78.     On October 27, 2017 Mr. Romaine acknowledged the FOIA request. The response indicated that certain records that were requested would not be provided and that a fee waiver would not be granted.

79.     On November 7, 2017, the Grunspans through their attorney appealed and contested that records would not be turned over and that a fee waiver would not be granted.

80.     The Appeal filed by the Grunspans was denied by OCR.  OCR then prepared and attempted to place on a computer disc certain records that it claimed comported with its obligations under FOIA.  An error occurred in this process and the disc was blank, so that no records were initially provided.

81.     OCR was notified of this fact and then submitted on June 14, 2018 a disc with 1,210 pages of records.  Approximately 3,000 pages of records were withheld.

## V.  CLAIMS FOR RELIEF

Gabriel Grunspan for himself and his daughter, Isabella Grunspan, allege the following claims:

### First Claim for Relief- Title VI-National Original Discrimination

82.     Plaintiffs reallege and incorporate by reference paragraphs 1-81 and the facts contained in those paragraphs, as if fully set forth herein.

83.      Isabella Grunspan has and had a protected right to be free from discrimination and harassment under Title VI of the Civil Rights Act of 1964.

84.     While a student at West Jeff Middle School, Isabella Grunspan was subjected to regular offensive discrimination, harassment and bullying from other students at her school for being Jewish.

85.     The Jefferson County School District (JCSD) and the middle school administration had actual knowledge of the hostility and abuses that were being directed against Jewish students. Numerous incidents were reported to the principal, assistant principal, and to

district officials.   The middle school officials and the District disregarded numerous complaints, inadequately handled numerous complaints, swept numerous complaints under the rug, tacitly allowed the discriminatory behavior to continue, such as students giving Nazi salutes in the hall and vocalizing "Heil Hitler."  The inaction and actions of the middle school administration and district allowed the anti-Semitic culture in the school to flourish.

86.     Defendant JCSD, through its officials and the administrators at the middle school, were aware or should have been aware of the severe, pervasive, and disturbing behavior directed toward Ms. Grunspan and other Jewish students and acted with deliberate indifference towards the situation, which resulted in harm to Ms. Grunspan.

87.     The environment was permeated with racial and religious hostility of such severity as to alter the terms and conditions of Ms. Grunspan's educational opportunities.  The alteration includes needing to drop a course, suffering academic issues in one or more courses, and ultimately forcing her into leaving the school and having to commute to another school.

88.     As a result of JCSD's violation of Ms. Grunspan's rights under Title IV, Ms. Grunspan has suffered emotional and psychological injury, loss of educational opportunity, and other damages.

89.     Plaintiff Gabriel Grunspan has suffered extra expenses for his daughter's education.

## Second Claim for Relief – Retaliation for Asserting Discrimination and making OCR Complaints Title IV Violation

90.     Plaintiffs reallege and incorporate by reference paragraphs 1-89 above, as if set forth in specificity.

91.     Title IV of the Civil Rights Act of 1964 makes it illegal for reporting discrimination to school officials and for filing a complaint with OCR.

92.     Plaintiffs had a good faith basis for reporting discrimination at the West Jeff Middle School.

93.     Both Isabella Grunspan and her father, Gabriel Grunspan, were retaliated against for reporting discrimination and for filing OCR complaints.

94.     The retaliation included but was not limited to labeling Mr. Grunspan as a troublemaker, putting a communication plan into place that limited Mr. Grunspan's ability to get information, labeling or categorizing Isabella Grunspan as a troublemaker, telling teachers they could not talk to Mr. Grunspan while the OCR investigation was taking place, labeling Isabella Grunspan as a liar of being untruthful in front of staff, delaying or not sending out the transcript information for Ms. Grunspan and other acts set forth above.

95.     The retaliatory actions of the Defendant and their employees were motivated in whole or in substantial part by an illegal discriminatory and wrongful animus.

96.     As a result of the illegal discriminatory retaliation, the Plaintiffs have been injured as set forth above.

**Third Claim for Relief-Violation of First Amendment**
**42 USC § 1983**

97.     Plaintiffs realleges and incorporates by reference paragraphs 1-96 as if set forth in specificity.

98.     Isabella Grunspan publicly spoke out to elected official in January 2017.  These officials governed the Jefferson County Public School System, including the middle school that Ms. Grunspan was attending.

99.     Ms. Grunspan's speaking out related to the widespread racial anti-Semitic events and harassment that was ongoing at the school.  At the time Ms. Grunspan spoke out, neither the school district, nor the administration at the middle school had admitted that there was a persistent, pervasive, and severe problem relating to anti-Semitic activity.

100.     Ms. Grunspan sought the Board's assistance in ending the anti-Semitic environment for all concerned.  This was a legitimate public outcry of social importance.

101.     Ms. Grunspan's speaking out in January 2017 to the Board of Education was protected activity under the First Amendment to the United States Constitution, both as free speech and a redress of grievances.

102. Following this exercise of First Amendment Rights, Defendant sought to penalize Ms. Grunspan and retaliate against her.  The principal of the Middle School told teachers and staff that what Ms. Grunspan had stated was untrue, thereby labeling Ms. Grunspan as a liar with the teachers, and told the teachers she was angry about what Ms. Grunspan had stated or what she communicated.  This attack was reported to the District and the District took no action to repudiate and correct the Principal's action. The District officials did not intervene and protect Ms. Grunspan from the teacher or the middle school administration retaliation.

103.     The principal's character attack on Ms. Grunspan stigmatized her and created academic hardships for Ms. Grunspan and furthered the negative environment that Ms. Grunspan had to endure.  It ultimately caused her to leave the middle school and study elsewhere.

104.     The retaliatory actions taken against Ms. Grunspan, were taken with a deliberate indifference to Ms. Grunspan's  constitutional and statutory rights and are actionable under 42 USC § 1983.

105.    Ms. Grunspan and Mr. Grunspan were injured as set forth above.

**Fourth Cause of Action – Contract Claim/Third Party Beneficiary**

106.    Plaintiffs reallege and incorporate by reference paragraphs 1-105 above, as if set forth in specificity.

107.    The acceptance of funds from the federal government required the school district to enter into a contract with the United States and the Department of Education.

108.    The Plaintiffs were third-party beneficiaries of the contract that contained an express term or requirement that the District provide educational opportunities in a non-discriminatory fashion.

109.    Defendant breached the contract requirement(s) relating to providing educational opportunities in a non-discriminatory fashion relating to the events described above in this Complaint that took place in the West Jeff Middle School in calendar years 2016 and 2017.

110.    The Plaintiffs were directly injured by the events and breach of contract and the injuries were foreseeable.

111.    Defendant is liable to the Plaintiffs for the breach of contract.

112.    The Plaintiffs provided the District a governmental immunity in compliance with Colorado Revised Statue, although no such notice is required for claims in contract or quasi contract.

**Fifth Claim for Relief-Promissory Estoppel/Quasi-Contract**

113.    Plaintiffs reallege and incorporate by reference paragraphs 1-111 above as if set forth in specificity.

114.    Defendant issues to students attending schools in the District a student handbook. This handbook provides students with requirements and includes terms relating to the attendance of schools in the District.

115.    Isabella Grunspan received the handbook, read the handbook, and relied upon the handbook to govern her actions.

116.    The handbook includes policy against discrimination and other forms of harassment.

117.    The handbook also tells students to report violations of rules and requirements and expressly state or implicitly promises that the reporting is protected activity for which retaliation will not occur.

118.    The handbook and the express and implied promises within the handbook creates contractual obligations or quasi contractual obligation between the student and the District.

119.    Ms. Grunspan after reporting anti-Semitic activity and actions both at school and to the Board of Education was subjected to retaliation by school personnel, including the school principal.

120.    Mr. Grunspan was also subjected to retaliation for his daughter's actions in reporting, and his support of his daughter's reporting and his reporting on her behalf.

121.    Defendant is liable to the Plaintiffs under theories of Promissory Estoppel and Quasi-Contractual Breach.

122.    Plaintiffs have been damaged as set forth above by Defendant's failure to honor its promises and the implied contractual terms.

**Sixth Cause of Action-FOIA Claim**

123.    Plaintiffs reallege and incorporate by reference paragraphs 1-122 as if set forth in detail.

124.    Plaintiffs through their attorney made a FOIA request for records relating to the OCR investigations of their complaints relating to discrimination and retaliation.

125.    The request included all material received from the district, all investigatory material, the findings at the District level that was sent to Washington, D.C. for review, communications between the Denver and Washington OCR offices.

126.    The Denver OCR timely acknowledged receipt of the requested and estimated that there approximately 4000 pages of documents.  The office advised that it would not honor the FOIA request relating certain material relating to the recommendation determinations from the Denver Office, and communications between the Denver Office and the Washington Office and vice versa.  It also indicated that it would be charging for copying, but a waiver could be requested.

127.    Plaintiffs through counsel provided written objection to the withholding of documents and also sought a waiver of copying charges because Plaintiffs were willing accept the material in electronic format.  Further, Plaintiffs asserted that the material were highly significant and were of an important public purpose-anti-Semitic activity in the schools was an increasing concern and has become even more so.  Additionally, how OCR was and is dealing with the issue is a critical concern.

128.     OCR rejected the appeal on withholding documents and a fee waiver and then failed to actually furnish documents until June 14, 2018.  Only 1210 pages of documents out of the purported 4000 documents were furnished.

129.     Furnishing the documents on June 14, 2018 was untimely.

130.     FOIA at 5 U.S.C. § 552(a)(4)(B)  authorizes a court to enter an injunction requiring that the all or some of the documents that were requested be released.

131.     Plaintiffs seek an injunction requiring that the release of additional documents be released. Such documents, if necessary can be released under a protective order.

132.     The release of the requested documents serves the public interest and public good. anti-Semitism is a growing concern nationwide and in the public schools.  OCR's responsibility is to address the problem and how it does so is also a critically important issue.

## V. Relief Requested

Plaintiffs pray that the Court enter the following relief:

1.     Enter judgment for the Plaintiffs for compensatory and contract damages/quasi contract damages against the School District Defendant in such an amount as proven at trial.

2.     Enter punitive damages against the School District Defendant, and if permitted by Statute.

3.     Award attorney fees and costs against the School District Defendant under applicable federal statutes, including 42 USC § 1988.

4.     Award interest on any damages awarded against the School District Defendant, at the highest amount allowed and from the earliest time permitted.

5. Enter an injunction against the Federal Defendants requiring that additional

records requested under FOIA be provided.

6. Award costs and attorney fees against the Federal Defendants pursuant to statute.

7. Plaintiffs request a jury trial on all claims and issues triable by jury.

Respectfully submitted this 19th day of December 2018.

       FINGER LAW, P.C.


       s/ William S. Finger
       William S. Finger, #7224
       Casey J. Leier, #45155
       P.O. Box 1477
       Evergreen, CO 80437
       Tele: (303) 674-6955
       Fax:  (303) 674-6684
       bill@fingerlawpc.com
       casey@fingerlawpc.com

Address:

P.O. Box 831
Pine, CO 80470